[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
On May 12, 1999, the issues in this case were tried to the Court. The plaintiff John Greene, sued the defendant, Alan Perry, in three counts alleging breach of contract, breach of statutory CT Page 6680 warranties, and negligence, respectively, with regard to the construction of residence on land in Canterbury owned by the plaintiff. The defendant counterclaims for the excess cost of electrical fixtures and the plumbing system.
The court finds the following facts:
The plaintiff owned property at 31 Sandy Lane, Canterbury. He saw the picture of a chalet-type house in a magazine and approached the defendant about building such a house on his land. The defendant agreed to build the house and informed the plaintiff that he should retain an architect to draft shop drawings incorporating several changes to the interior layout The defendant would then use the shop drawings to construct the residence. The plaintiff arranged for excavation, foundation work, septic work, and landscaping to be done separately. The defendant was responsible under the parties' written contract for the framing, finishing work, roofing, and the electrical and plumbing installation. Essentially, the defendant was to construct everything above the foundation.
On August 21, 1994, the parties signed a written contract, drafted by the defendant, memorializing their agreement. At the defendant's suggestion, the plaintiff hired G. H. Associates as their architect. That firm drew up the shop plans which the defendant was to follow.
The original plans called for a main carrying beam running the length of house, dividing it down the middle, and supported by three lally columns in the basement. Because the plaintiff wanted to finish the basement someday, he requested that the plans be redrawn eliminating one column. The architect redrew the plans using only two lally columns for support of the main carrying beam, but the architect warned the defendant that the carrying beam now needed to be steel. The defendant never relayed this warning to the plaintiff and constructed the beam by nailing three, two-by-twelve inch wooden planks together.
The carrying beam supports the floor joists for the first floor midway across the basement. The floor joists, in turn, support the interior bearing walls of the house. The interior ends of the floor joists overhang the carrying beam slightly. Above the beam was located a central hallway. This seven-foot wide hallway was flanked by two load-bearing interior walls. Consequently, instead of the load-bearing walls resting directly CT Page 6681 atop the main carrying beam, these walls were resting on the floor joists three and one-half feet to either side of the beam.
This arrangement constituted a design flaw because as the load-bearing walls settled they sank having insufficient support directly underneath or other effective means to redistribute their loads. This subsidence caused a "scissors effect" whereby the overhanging ends of the joists were raised as the loading bearing walls sank pivoting on the carrying beam in between. The result was that the first floor hallway subfloor became mounded in the middle. This crowning of the subfloor damaged the finish floor above it which comprised wood in some areas and ceramic tile in other areas.
In order to correct this problem, a new support system needs to be configured in the basement to transfer the load from the hallway walls to the main carrying beam. This correction will necessitate not only new construction in the basement, but also the removal of the flooring on the first floor above the carrying beam. The removed flooring cannot be reused but must be replaced. After considering the conflicting evidence on this repair, the court concludes that the cost to correct this problem will be around $15,000. This is in addition to the $4,700 which the plaintiff has already expended to stabilize the situation temporarily.
The kitchen cabinets are positioned such that one cabinet drawer cannot be fully opened nor can the refrigerator door open fully because they obstruct one another. Also, one kitchen wall fails to align with the wall across an opening so that the kitchen floor projects somewhat into the adjoining room.
The contact price for the defendant's work was $80,312 after allowances for landscaping and carpeting are deducted. Other facts will be provided infra.
 I
The count addresses the second count first. This court alleges that the defendant breached the express and implied warranties afforded by CGS § 47-117 and § 47-118. The defendant contends that these statutory warranties only apply where the builder sells both a new home and the land upon which it sits. The court agrees with the defendant. CT Page 6682
By their terms, these statutes pertain to new homes sold by a vendor to a purchaser. "Purchaser" is specifically defined, in CGS § 47-116, to mean "the original buyer, his heirs or designated representatives, of any improved real estate," emphasis added. "Real estate" is defined to mean, under § 47-116, "any fee simple estate." In the present case, the plaintiff already owned the unimproved realty. The agreement called for the erection of a new residence on the plaintiffs land. The defendant conveyed no real estate to the plaintiff Therefore, the plaintiff was not a purchaser under §§ 47-117 and 47-118 as defined by § 47-116. These warranty provisions are inapplicable to the circumstances of this case.
 II
As to the first and third counts of the complaint, alleging breach of contract and negligence, both based on faulty workmanship, the court finds that the defendant's failure to use a steel beam as he was cautioned to use by the architect constitutes substandard workmanship. Michael Culmo, a structural and civil engineer, and Richard Matteau, a building contractor, concurred that the wooden beam employed by the defendant was over-spanned because only two support columns were used. This over-spanning produced the scissoring of the joists which created the hump in the center of the first floor hallway. Robert Kerr, the Canterbury building official, also testified that the three, two-by-twelve inch wooden planks were inadequate for the job.
The court finds this testimony credible. The defendant had a duty to follow the architect's direction regarding a steel beam or beam of equivalent strength and failed to do so. The resulting structure was unworkmanlike and constituted a breach of the agreement and negligence.
As to the plaintiff's other areas of dissatisfaction, the court finds that the plaintiff has failed to prove subpar workmanship by a preponderance of the evidence. The plaintiff contends that the improper placement of the kitchen cabinetry, the misalignment of walls, and the uneven coloration of the kitchen floor tiles were the responsibility of the defendant. The court rejects these contentions. The organization, selection, and the location of the kitchen cabinets was a collaboration between the parties. The plaintiff chose the style and proposed the placement of these fixtures. A contractor incurs no liability resulting from defective plans provided by the contractee, CT Page 6683Southern New England Contracting Co. v. State, 165 Conn. 644, 656
(1974); Argentinis v. Gould, 23 Conn. App. 9, 16 (1990).
Similarly, the alignment of the kitchen walls was constructed by the defendant to accommodate certain requests made by the plaintiff concerning the dimensions of the kitchen. The defendant is, therefore, free from liability for the position of the walls erected at the plaintiff's behest.
The style and color of floor tiles were selected by the plaintiff. The defendant purchased the tiles from Home Depot, whose employee assured the defendant that the tiles supplied came from the same lot. Any unevenness in color is attributable to the product provided by Home Depot. In any event, the court remains unconvinced that the plaintiff has proven, by the preponderance of the evidence, that the small differences in color of some of the tiles resulted from a breach of contract or a breach of any other duty owed to the plaintiff by the defendant.
 III
Turning to the defendant's counterclaim, the court finds that the parties agreed under the contract to allot $5,000 for electrical fixtures and $7,000 for plumbing work. The defendant, without consulting the plaintiff, exceeded these allotments. The defendant claims a right to compensation from the plaintiff for the difference between the actual expenses he incurred and the contract allowances. The defendant bases this claim on unjust enrichment or quantum meruit.
In this case, the contract expressly allocated sums for the electrical fixture and plumbing system, but lacked any provisions addressing the assignment of financial responsibility for cost overruns. The contract was drafted by the defendant. He could have negotiated a cost-plus provision for such expenses but failed to do so. It is a general principle of contract law that ambiguous provisions in an agreement are construed against the drafter of that agreement, Springdale Donuts, Inc. v. AetnaCasualty and Surety Co., 247 Conn. 801, 812 (1999); Mongillo v.Commissioner, 214 Conn. 225, 231 (1990). Therefore, the court regards the contact between the parties as leaving the risk of cost overrun to the defendant to bear.
Here, the plaintiff never requested more than the contract called for with regard to electrical fixtures or the plumbing CT Page 6684 system. The items furnished and installed by the defendant were not extras, but simply the fulfillment of the terms of the contract. The court holds that a contractor cannot pass the cost of construction which exceeds that contemplated by the parties to the contract to the contractee under a theory of unjust enrichment or quantum meruit. The items furnished were not inadvertently installed nor of greater quality than that called for in the agreement. The court cannot rewrite the parties' contract, Gibson v. Capano, 241 Conn. 725, 732 (1997). Nor can the court nullify the contract simply because its execution proves economically disadvantageous to one party, Newman andPartners v. CFC Construction, Ltd., 236 Conn. 750, 759 (1996).
The plaintiff received no unbargained for benefit. Unjust enrichment and quantum meruit are inapplicable unless some benefit to which a party is unentitled is conferred, Franks v.Lockwood, 146, Conn. 273, 278 (1959). Consequently, the court finds for the plaintiff on the defendant's counterclaim.
Judgment enters for the plaintiff on the first and third counts of the complaint in the amount of $19,700 plus costs. Judgment also enters for the plaintiff on the counterclaim.
Sferrazza, J.